LINUS B. WALES ET AL. *vs.* CHARLES B. GRAVES.

First Judicial District, Hartford, October Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, JS.

Under Chap. 194 of the Public Acts of 1897, §§ 8–10, it is essential to the correction of the finding upon appeal that the particulars wherein it is claimed to be defective should have been made the basis of a written motion to the trial judge for his alteration or amendment, together with the appellant's reasons and grounds therefor.

The parties were at issue as to whether a certain publication issued by the plaintiffs complied with the terms of their prospectus and the oral representations of their duly authorized agent. The trial court found that the historical articles announced in the prospectus were included in the published volumes, but that the work also contained a great number of biographies and portraits of individuals of no historical importance, the insertion of which had been secured by the payment of sums ranging from $225 to $500; also lists of existing business houses with descriptive eulogistic accounts, in some instances resembling advertisements; and that the insertion of this non-historical matter rendered the work, as a whole, unsatisfactory and undesirable as a historical publication. The court refused to rule or find that the historical articles, which formed about one

half of the four volumes, constituted of themselves such a history as was called for by the prospectus. *Held* that upon the evidence disclosed by the record it did not appear that the court erred in this refusal.

A reason of appeal alleging that the court erred in rendering judgment in favor of the opposing party, upon the evidence in the case, is insufficient, and presents no question for the consideration of this court.

Argued October 6th—decided October 27th, 1899.

ACTION to recover the amount of a book subscription, brought originally before a justice of the peace and thence by the defendant's appeal to the Court of Common Pleas in Hartford County and tried to the court, *Peck, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiffs for alleged errors in the rulings and findings of the court. *No error.*

The action was begun in the name of Wales as sole plaintiff, but in the Court of Common Pleas D. H. Hurd and Company were by leave of the court admitted as plaintiffs.

The third paragraph of the second defense of the answer was as follows: "Said work and books so tendered to the defendant as aforesaid were not a history covering the departments named in said exhibit, written by some of the most prominent public men and writers of established reputation for learning in said departments, but were very largely composed of cheap, commonplace sketches of individuals of little or no prominence, written by themselves or persons of little or no ability or notoriety, and was very largely composed of portraits of individuals of no historical importance or value, who paid for the insertion of said portraits large sums, for the purpose of advertisement; and was also further composed of cheap, commonplace advertisements of certain business concerns, written by people of little or no ability or prominence."

The issue raised by the plaintiffs' reply denying these allegations, was found by the court in favor of the defendant.

The court also found the following facts: "1. The plaintiffs D. H. Hurd & Co. are a partnership located in the city of Boston, and are publishers of books. 2. On or about Sep-

tember 27th, 1895, the defendant signed a subscription con-
tract with said Hurd & Co., in the words following: 'We,
the undersigned, do each hereby agree to take of D. H. Hurd
& Co. one copy of their work entitled "The New England
States, their Constitutional, Educational, Commercial, Pro-
fessional, and Industrial History," illustrated, to be published
in three or more volumes, for which we agree to pay them or
their order the sum of thirty dollars for the complete work
on delivery of same at our residence or place of business, the
work to be delivered as soon as completed.

  "'Name.        Date of Order.     P. O. Address.
"'C. B. Graves, M. D.   Sept. 27, 1895.   New London, Conn.'
3. At the time of taking said subscription said Hurd & Co.,
by their agent fully authorized thereto, made certain repre-
sentations to the defendant as to the character of the work
to be published, and also showed him a printed prospectus
describing the proposed work and giving a list of the titles
and authors of certain articles already engaged.   These titles
were of articles which would be valuable and important if
properly treated, and the authors were for the most part men
of eminence and authority in the fields assigned to them. . . . .
4. The representations, made orally and in said prospectus,
were, in brief, that the work would be a first-class history of
the New England States in the respects mentioned in the
title, written by men of eminence and learning in the several
departments to which the articles written by them should
relate, and that the articles and authors mentioned in the
prospectus were a fair sample of the articles to be contained
in the published work, and of the authors who would write
them.   5. It was admitted and claimed by both parties on
the trial, that these oral and printed representations were the
basis of the contract between the parties.   6. In June, 1897,
within a reasonable time after its completion, Hurd & Co.
delivered to the defendant at his residence a book in four
volumes, bearing the title given in the subscription contract,
as a fulfillment of the contract on their part.   7. The defend-
ant, after examination of the volumes delivered, refused to
accept them, and returned them to Hurd and Company.   He

has never paid the contract price, nor any part thereof. 8. The articles announced in the prospectus are all included in the published work, with some unimportant modifications of title and changes of authorship, and there are a few other articles of the same general character. These articles are suitable to be included in such a historical work as that contracted for. To these are added two other classes of articles: first, biographies of individuals with portraits, and second, detailed lists of existing business houses in different sections, with descriptive accounts, generally of a eulogistic character, and in some cases so much so that they resemble advertisements rather than historical description. There are also over three hundred portraits on heavy plate paper. The work contains about 1,650 pages of properly historical character, about 950 pages of texts of the two classes above mentioned, and the bulk of the latter, with the portraits, is about equal to that of the former. 9. The subjects of the biographical articles and portraits were not selected for their historical importance, but were included because of the payment of various sums, ranging from $225 to $500, and, with a few exceptions, were not men whose lives and portraits should have been included in a first-class historical work. 10. The business houses selected for description were not so chosen as to make this class of articles a fairly proportioned description of either the historical development of or the present status of the business of New England; by what method or for what reasons the selection was made did not appear in evidence. 11. The published work contained no illustrations except the portraits already mentioned. 12. The published work, as a whole, was not a first-class history of the New England States in the respects mentioned in the title, nor were the articles announced in the prospectus a fair sample of the published work as a whole ; but the inclusion of the non-historical matter above described rendered the work, as a whole, unsatisfactory and undesirable as an historical work."

The printed prospectus was made a part of the finding.

Upon the above facts the court rendered judgment for the defendant.

There are assigned as reasons of appeal (1st) the exceptions of the plaintiffs to paragraphs 8 (except the first two sentences thereof), 9, 10 and 12 of the finding of the court; (2d and 3d) to the refusal of the court to find certain additional facts, among which were these : That " if what is termed the non-historical matter, consisting of biographical articles and descriptive material of business houses, had not been contained in the work, the remainder of the contents of the work, consisting of the articles announced in the prospectus, and a number of other articles of the same general character, would have met the requirements of the title and of the oral and written representations made in regard to the work, and would have fulfilled adequately and satisfactorily the terms of the subscription contract; " and (4th) that judgment was rendered in favor of the defendant " upon the evidence submitted in the case."

*Franklin H. Knight*, for the appellants (plaintiffs).

*Hadlai A. Hull* and *Alfred Coit*, for the appellee (defendant).

HALL, J.   This is an action upon a written contract by the terms of which the defendant promised to pay $30 upon the delivery to him of a certain illustrated historical work entitled " The New England States, their Constitutional, Educational, Commercial, Professional and Industrial History," to be published by the plaintiffs, D. H. Hurd & Co., in three or more volumes, and to be of the character represented by the plaintiffs' agent and by a printed prospectus.

Four reasons of appeal are assigned.   The first three are for the purpose of procuring a correction of the finding, that it may present the questions of law decided by the trial court.

Certain issues of fact were raised by the pleadings and decided in the Court of Common Pleas.   The record does not disclose that during the trial of the case any question of law was decided by that court, nor that any claim of law was made by counsel.   Apparently the only ruling upon a legal

question was in rendering judgment for the defendant, upon the facts found.

To entitle the plaintiffs to a correction of the finding on this appeal, it must not only be made to appear by the evidence certified, either that some fact material to that ruling and proved upon the trial has been omitted from the finding, or that some material fact contained in the finding was not proved, but also that after the trial judge had filed his finding, and within the time fixed by statute, the plaintiffs filed a written motion requesting these particular corrections to be made, and stating their "reasons and grounds for the same." Only those exceptions to the finding of any fact, or refusal to find any fact, which are a part of such motion to correct, can properly be assigned as reasons of appeal to this court. Public Acts of 1897, Chap. 194, §§ 8, 9 and 10.

The only motion to correct the finding contained in the record is that requesting the trial judge to add to the finding the paragraph described in the third reason of appeal. The plaintiffs have therefore failed to make the necessary motion to correct, to enable them to sustain the first and second reasons of appeal. But, aside from that failure, the only evidence certified to us to support these two, as well as the third, reasons of appeal, is a copy of the publication in question; and this we think is not sufficient to sustain them.

The third reason of appeal is based upon the refusal of the court to add to the finding the statement that if the non-historical matter had not been contained in the work, the remainder of its contents would have met the requirements of the title and of the oral and written representations, "and would have fulfilled adequately and satisfactorily the terms of the subscription contract."

There was no claim that the work tendered to the defendant and which he refused to receive, did not contain the objectionable biographical articles and those descriptive of business houses, referred to in the plaintiffs' motion as non-historical matter. It was therefore immaterial to the issue raised by the pleadings whether, if it had not contained such matter, it would have answered the terms of the contract.

The question was whether the work tendered the defendant, the contents of which are described in paragraph 8 of the finding, was the work promised by the contract of subscription.

Probably the plaintiffs meant by their motion to ask the judge to add to the finding, either as a statement of fact or as a ruling of law, that independently of the so-called non-historical matter, the books contained all that the plaintiffs had promised, and that by having furnished that, and something more, they had not failed to fulfill the subscription contract.

The trial court found that the articles announced in the prospectus were all included in the published work, and that they were suitable to be included in such a historical work as that contracted for; but refused to hold or find that the historical articles, of the class first described in paragraph 8 of the finding, and which occupy only about one-half of the four volumes, constituted of themselves such a history of the New England States as was called for by the contract. Assuming that this was a refusal to find a fact claimed to have been proved, rather than a refusal to rule as requested upon a matter of law, we discover in the evidence before us no ground for holding that the trial court erred in deciding that both the publishers and the subscribers properly interpreted the contract as requiring the publication of something more than what is contained in these volumes, exclusive of the said non-historical matter referred to in paragraph 8 of the finding as the two other added classes of articles.

The fourth reason of appeal, that the court erred in rendering judgment in favor of the defendant upon the evidence submitted in the case, is insufficient as an assignment of error, and raises no question for our consideration. *Anderson* v. *New Canaan*, 70 Conn. 99.

There is no error.

In this opinion the other judges concurred.